JAMES G. KREISSMAN (Bar No. 206740)
jkreissman@stblaw.com
SIMONA G. STRAUSS (Bar No. 203062)
sstrauss@stblaw.com
STEPHEN P. BLAKE (Bar No. 260069)
sblake@stblaw.com
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, California  94304
Telephone: (650) 251-5000
Facsimile: (650) 251-5002

*Attorneys for Defendant Alibaba Group
Holding Limited*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GARY BUELOW, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ALIBABA GROUP HOLDING LIMITED, et al.,<br><br>Defendants. | Case No. 15-cv-05179-BLF<br><br>CLASS ACTION<br><br>**DEFENDANT ALIBABA GROUP HOLDING LIMITED'S NOTICE OF MOTION & MOTION TO STAY PROCEEDINGS PENDING DETERMINATION BY JPML OF TRANSFER PURSUANT TO 28 U.S.C. § 1407; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  December 17, 2015<br>Time:  9 a.m.<br>Courtroom:  3, 5th Floor<br>Judge: Hon. Beth Labson Freeman<br><br>[Filed concurrently herewith: Declaration of Simona G. Strauss; [Proposed] Order] |
| RUSTEM NURLYBAYEV, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ALIBABA GROUP HOLDING LIMITED, et al.,<br><br>Defendants. | |

MICHAEL HERCULES, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

ALIBABA GROUP HOLDING LIMITED, et al.,

Defendants.

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION ....................................................................................... 1

RELIEF REQUESTED ........................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 3

PRELIMINARY STATEMENT ............................................................................................ 3

FACTUAL BACKGROUND .................................................................................................. 4

ARGUMENT ............................................................................................................................ 7

I.      The Court Has Broad Discretion To Stay Proceedings Pending The JPML Transfer
        Decision .......................................................................................................................... 7

II.     A Stay Of This Case Would Conserve Judicial Resources, Prevent Hardship To
        Defendants, And Present No Prejudice To Plaintiff ............................................. 9

        A.      Plaintiff Will Not Be Prejudiced by a Brief Stay .................................... 9

        B.      Defendants May Suffer Harm Without a Short Stay ............................... 10

        C.      Granting a Short Stay Will Conserve Judicial Resources ....................... 10

CONCLUSION ....................................................................................................................... 11

APPENDIX A ........................................................................................................................ A-1

# TABLE OF AUTHORITIES
## CASES

*Davis v. Pfizer, Inc.*,
   No. C 14-1204 SI, 2014 WL 1599005
   (N.D. Cal. Apr. 21, 2014) ........................................................................................... 7

*Franklin v. Prospect Mortg., LLC*,
   No. 2:13-cv-00790 JAM-AC, 2013 WL 6423389
   (E.D. Cal. Dec. 9, 2013) ............................................................................................. 9

*Freitas v. McKesson Corp.*,
   No. C 11-05967, 2012 WL 161211
   (N.D. Cal. Jan. 10, 2012) ......................................................................................... 8, 9

*Fuller v. Amerigas Propane, Inc.*,
   No. C 09-2493 TEH, 2009 WL 2390358
   (N.D. Cal. Aug. 3, 2009) .......................................................................................... 8, 9

*Hubuschman v. Zuckerberg*,
   No. C-12-3366 MMC, 2012 WL 3985509
   (N.D. Cal. Sept. 11, 2012) ...................................................................................... 8, 11

*In re Reserve Fund Sec. & Derivative Litig.*,
   598 F. Supp. 2d 1370 (J.P.M.L. 2009) ....................................................................... 8

*Jones v. Bristol–Myers Squibb Co.*,
   No. C 13–2415 PJH, 2013 WL 3388659
   (N.D. Cal. July 8, 2013) .......................................................................................... 8, 10

*Landis v. North Am. Co.*,
   299 U.S. 248 (1936) ..................................................................................................... 7

*McVicar v. Goodman Global Inc.*,
   No. SACV 13-1223-DOC, 2013 WL 6212149
   (C.D. Cal. Nov. 25, 2013) ............................................................................................ 9

*Pub. Emps. Ret. Sys. of Ohio v. Fastow, et al.*,
   No. C2-02-965
   (S.D. Ohio Oct. 22, 2002) .......................................................................................... 11

*Rivers v. Walt Disney Co.*,
   980 F. Supp. 1358 (C.D. Cal. 1997) .................................................................... 7, 9, 10

*Valentine v. Merck & Co.*,
   No. 06-cv-2154 DMS, 2006 U.S. Dist. LEXIS 86441
   (S.D. Cal. Oct. 23, 2006) .......................................................................................... 7-8

## STATUTES

28 U.S.C. § 1331 ............................................................................................................ 7

28 U.S.C. § 1407 ...................................................................................................... 1, 11

Fed. R. Civ. P. 1 ............................................................................................................ 7

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on December 17, 2015 at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Beth Labson Freeman, in Courtroom 3 of the United States District Court for the Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, California 95113, Defendant Alibaba Group Holding Limited ("Alibaba" or the "Company"), without waiving any defenses, shall and hereby does move for a stay of all proceedings in this action pending a final decision by the Judicial Panel on Multidistrict Litigation ("JPML") in connection with the transfer of this action pursuant to 28 U.S.C. § 1407 for centralized pretrial proceedings with multidistrict litigation already centralized by the JPML in the United States District Court for the Southern District of New York before the Honorable Colleen McMahon in *In re Alibaba Group Holding Limited Securities Litigation*, MDL No. 2631 (the "Alibaba Securities MDL").

This motion is based upon this notice of motion and motion, the supporting memorandum of points and authorities, the supporting declaration of Simona G. Strauss, dated November 12, 2015 ("Strauss Decl."), any papers filed in reply, the argument of counsel, and all papers and records on file in this matter.

**RELIEF REQUESTED**

Defendant Alibaba respectfully seeks a brief stay of proceedings pending a decision by the JPML regarding the transfer of this action to the Alibaba Securities MDL.  The JPML expressly established the Alibaba Securities MDL to allow a single court to oversee and coordinate pre-trial proceedings in connection with the multiple securities class action lawsuits that have been filed to date in various courts, including the Northern District of California, all of which allege – like the complaint here – that Alibaba made materially false and/or misleading statements with respect to the soundness of its business operations and the strength of its financial prospects, and specifically whether Alibaba concealed material information concerning Chinese regulatory scrutiny of the Company.  A short stay here would allow the JPML to determine whether this securities action, which challenges the same statements challenged by the plaintiffs in the Alibaba Securities MDL, should be included in that MDL.  A brief stay pending the JPML's transfer determination will not

1   prejudice Plaintiff and, most importantly, will allow the Alibaba Securities MDL court to consider

2   Plaintiff's anticipated remand motion and any other potential pretrial motions, thereby serving the

3   interests of judicial economy and efficiency and avoiding the risk of inconsistent adjudication of

4   common issues.

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

In early 2015, seven purported securities fraud class actions were filed against Alibaba and certain of its officers and directors.  Those putative securities class actions, like the instant action, allege that the registration statement and prospectus filed in connection with Alibaba's September 19, 2014 initial public offering ("IPO") (collectively "Registration Statement") contained false or misleading statements and omissions of material facts.  Specifically, the plaintiffs in those seven suits allege that the defendants' failure to disclose a July 2014 meeting between Alibaba and China's State Administration of Industry and Commerce ("SAIC"), one of Alibaba's regulators in China, and the implications thereof, rendered numerous statements in the Registration Statement false or misleading.

In June 2015, the JPML established the Alibaba Securities MDL, finding that these seven actions "share factual questions arising from allegations that Alibaba and the Individual Defendants made materially false and/or misleading statements with respect to the soundness of Alibaba's business operations and the strength of its financial prospects, and concealed substantial ongoing regulatory scrutiny of the company[.]"  These seven actions, each of which asserted claims under the Securities Exchange Act of 1934, are now centralized for pretrial proceedings in the Alibaba Securities MDL before the Honorable Colleen McMahon in the Southern District of New York.  All seven actions were transferred before the transferor courts were required to make any substantive rulings or otherwise familiarize themselves with the litigations.  A motion to dismiss the consolidated securities class action complaint has been fully briefed, and a decision on that motion is pending.

The instant securities class action, which brings claims under the Securities Act of 1933, was not filed until October 2015, months after the Alibaba Securities MDL was established. Based on the substantial overlap in factual allegations and legal issues between this action and the class actions in the Alibaba Securities MDL, Alibaba removed this action from state court and immediately filed a notice of tag-along action with the JPML to transfer this action to the Southern

1  District of New York for centralized pretrial proceedings.  Alibaba expects the JPML to make a

2  final transfer decision during its January 2016 session.

3       A brief stay of proceedings in this action will allow the MDL process to function as

4  designed.  It will allow the JPML to make the transfer decision.  It will allow Judge McMahon to

5  consider the pre-trial issues raised in this action, along with the many similar issues she must

6  consider in the Alibaba securities class actions already pending before her, as intended by the

7  JPML.  It also will conserve already strained judicial resources and avoid the possibility that this

8  Court will be asked to consider issues that are already being considered by Judge McMahon,

9  thereby protecting against the possibility of inconsistent results.  A temporary stay also will avoid

10  the risk of inconsistent decisions, should this Court rule upon Plaintiff's anticipated remand

11  motion in one manner and another court rule on a remand motion in a similar but yet-to-be-filed

12  state court securities action against Alibaba in a different manner.  In addition, should this action –

13  or any of the actions in the Alibaba Securities MDL – proceed to discovery, coordination of this

14  action with others that raise identical factual issues will allow discovery to proceed in a more

15  efficient manner, and will conserve resources of the courts, the parties, and witnesses.  Moreover,

16  a short stay will pose no prejudice to Plaintiff, whose action is in its infancy.

17                        **FACTUAL BACKGROUND**

18  **Seven Actions Have Been Centralized In The Southern District Of New York**

19       From January through April 2015, various plaintiffs filed seven putative class actions

20  against Alibaba and certain officers and directors in three different United States district courts.

21  Strauss Decl. ¶ 3.[1]  The first of these actions was filed in the Southern District of New York by the

22  same Co-Lead Counsel that filed the *Buelow* complaint in San Mateo (and that was not thereafter

23  selected as lead counsel in the Alibaba Securities MDL).  All of those actions allege that Alibaba's

24  IPO Registration Statement contained material misrepresentations and omissions.  *Id.* ¶ 4.  In June

25  2015, the JPML centralized these actions in the Alibaba Securities MDL, stating "we find that

26  these actions involve common questions of fact, and that centralization in the Southern District of

27  _____

28  [1]  Four actions were filed in the Southern District of New York; two actions were filed in the
     Central District of California; one action was filed in this Court.  *Id.* ¶ 4.

1   New York will serve the convenience of the parties and witnesses and promote the just and

2   efficient conduct of this litigation."  Strauss Decl. Ex. A at 1.  The JPML noted that "[t]he

3   allegations in each of the actions center on an alleged meeting between Alibaba executives and a

4   regulatory agency of the People's Republic of China, which took place approximately two months

5   before Alibaba's initial public offering in the United States and at which the Chinese regulator

6   criticized Alibaba's oversight of merchants and the sale of counterfeit and infringing goods on its

7   various online marketplaces and platforms."  *Id.*  In centralizing the actions, the JPML explained

8   that centralization would "eliminate duplicative discovery; prevent inconsistent pretrial rulings,

9   particularly with respect to class certification; and conserve the resources of the parties, their

10  counsel, and the judiciary."  *Id.*  The JPML selected Judge McMahon to oversee the MDL, noting

11  that she had "multidistrict and securities litigation experience and the ability to steer this litigation

12  on an efficient and prudent course."  *Id.* at 2.

13       Shortly after the Alibaba Securities MDL was created, the lead plaintiffs appointed by

14  Judge McMahon filed a consolidated complaint.  Strauss Decl. ¶ 6 & Ex. B.  Again, the plaintiffs

15  alleged that Alibaba should have disclosed a July 2014 meeting that it had had with the SAIC, one

16  of Alibaba's regulators in China, during which the SAIC advised Alibaba of certain issues related

17  to the sale of goods by third-party merchants on Alibaba's platforms.  *Id.*  The consolidated

18  complaint asserted claims under the Securities Exchange Act of 1934 (the "'34 Act").  *Id.*

19       On July 31, 2015, the MDL defendants moved to dismiss the complaint.  *Id.* ¶ 7.  Among

20  the grounds for dismissal was the plaintiffs' failure to allege that any of the challenged statements

21  were false or misleading.  *Id.*  That motion has been fully briefed, and the parties are awaiting

22  Judge McMahon's decision.  *Id.*

23  **<u>This Case Raises The Same Issues As Those In The Alibaba Securities MDL</u>**

24       The instant action was removed to this Court after the California Superior Court

25  consolidated three securities class actions that had been filed separately but that included

26  essentially identical allegations.  Strauss Decl. Ex. C.  The three consolidated state court actions,

27  removed as one action to this Court, are referred to herein as the "*Buelow* Action."

28

1    The *Buelow* Action falls precisely within the definition of the Alibaba Securities MDL.

2    Although the MDL and this action both involve federal securities claims, Plaintiff Buelow brought

3    claims only under the Securities Act of 1933 (the "'33 Act").[2]   The elements of the '33 Act claims

4    and '34 Act claims are largely duplicative and have overlapping elements, as each requires a

5    finding that Alibaba made false and misleading statements or omissions.  Like the plaintiffs in the

6    Alibaba Securities MDL, Plaintiff Buelow asserts that Alibaba violated the federal securities laws

7    based on its failure to disclose the July SAIC meeting.  Indeed, *every single statement* in the

8    Registration Statement that is quoted in the *Buelow* complaint and alleged to be false or

9    misleading is also challenged in the MDL Complaint (Strauss Decl. Ex. B).  *Cf., e.g.*, *Buelow*

10   Compl. ¶ 85 *with* MDL Compl. ¶¶ 106, 108, 110; *Buelow* Compl. ¶ 87 *with* MDL Compl. ¶¶ 112,

11   118; *Buelow* Compl. ¶ 89 *with* MDL Compl. ¶ 125; *Buelow* Compl. ¶ 91 *with* MDL Compl. ¶¶

12   127, 129; *Buelow* Compl. ¶ 93 *with* MDL Compl. ¶ 131; *Buelow* Compl. ¶ 95 *with* MDL Compl.

13   ¶¶ 144, 147; *see also* App'x A.  Additionally, every defendant in the Alibaba Securities MDL is

14   also named as a defendant in the *Buelow* Action.[3]

15   **The JPML Is Considering Transfer Of This Action To The MDL**

16         Following removal of this action, Defendant Alibaba filed a Notice of Tag-Along Action,

17   advising the JPML that this action "involves common factual allegations with the actions

18   previously transferred by the Panel and now part of" the Alibaba Securities MDL.  Strauss Decl.

19   Ex. D.  Alibaba expects the JPML to issue a conditional transfer order ("CTO") in the very near

20   future.  Strauss Decl. ¶ 10.

---

[2]   Those claims likely had not been brought in the MDL because Alibaba's stock price remained significantly above its September IPO price until August 2015 and thus no claim under the '33 Act could be asserted until that time.

[3]   The *Buelow* Action includes two additional individual defendants as well the underwriters of Alibaba's IPO.  All defendants who have been served support Alibaba's Motion to Stay Proceedings.

---

**Plaintiff Will Likely Move For Remand And Oppose Transfer To The Alibaba Securities MDL**

Plaintiff could have filed this securities action in federal court based on the federal questions at issue.  28 U.S.C. § 1331.  Because he chose not to do so, in an apparent attempt at forum shopping, Defendants anticipate that Plaintiff will seek to remand this action to state court. In addition, because Plaintiff likely filed his complaint in state court to avoid being included in the already established Alibaba Securities MDL, Defendant Alibaba believes that Plaintiff may move the JPML to vacate the imminent CTO after it is issued.

The JPML should have the opportunity to decide Plaintiff's anticipated motion to vacate the CTO and also to decide whether the MDL court or this Court should decide the anticipated remand motion.  A short stay of this action, or other scheduling order that accomplishes the same result, is therefore appropriate.

## ARGUMENT

**I.    The Court Has Broad Discretion To Stay Proceedings Pending The JPML Transfer Decision**

The power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936); *Davis v. Pfizer, Inc.*, No. C 14-1204 SI, 2014 WL 1599005, at *1 (N.D. Cal. Apr. 21, 2014) (citing *Landis* and granting stay); *see also* Fed. R. Civ. P. 1.  Under the circumstances here, "a majority of courts have concluded that it is often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the MDL Panel because of the judicial resources that are conserved." *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1362 (C.D. Cal. 1997).  Numerous courts in this District have exercised their discretion to stay proceedings pending the JPML's determination of whether to transfer a case to another district in recognition of the efficiency and uniformity that would result from the stay and subsequent transfer.  *See, e.g.*, *Davis*, 2014 WL 1599005, at *1.

Indeed, even where, as may soon be the case here, a motion to remand is pending, "[t]he general rule is for federal courts to defer ruling on pending motions to remand in MDL litigation

---

1    until after the JPMDL has transferred the case to the MDL panel." *Valentine v. Merck & Co.*, No.

2    06-cv-2154 DMS, 2006 U.S. Dist. LEXIS 86441, at *2-3 (S.D. Cal. Oct. 23, 2006) (exercising

3    "inherent power to stay its proceedings"); *see also Jones v. Bristol–Myers Squibb Co.*, No. C 13–

4    2415 PJH, 2013 WL 3388659, at *2 (N.D. Cal. July 8, 2013) ("Courts in this district . . . have

5    granted motions to stay in order to preserve judicial resources, even where jurisdictional questions

6    and motions to remand are at issue."); *Freitas v. McKesson Corp.*, No. C 11-05967, 2012 WL

7    161211, at *2 & n.9 (N.D. Cal. Jan. 10, 2012) ("[C]ourts are *not* bound to preliminarily consider

8    the merits of a remand motion before considering a motion to stay.") (emphasis in original) (citing

9    cases).  Indeed, the JPML itself has recognized that it is proper for it first to decide whether to

10   transfer a case, and, if transfer is ordered, then the "plaintiff can present its motion for remand to

11   state court to the transferee judge." *In re Reserve Fund Sec. & Derivative Litig.*, 598 F. Supp. 2d

12   1370, 1371 (J.P.M.L. 2009).[4]

13       District courts often stay proceedings pending JPML determinations even when an MDL

14   has yet to be created, and thus before it is known whether there will be an MDL and, more

15   importantly, which court will oversee any MDL that is established.  *See, e.g.*, *Hubuschman v.

16   Zuckerberg*, No. C-12-3366 MMC, 2012 WL 3985509, at *1 (N.D. Cal. Sept. 11, 2012) (staying

17   proceedings where three actions were brought in Northern District of California and one was

18   brought in Southern District of New York); *Fuller v. Amerigas Propane, Inc.*, No. C 09-2493

19   TEH, 2009 WL 2390358, at *2 (N.D. Cal. Aug. 3, 2009) ("There is simply no reason for this

20   Court to expend its time and energy on these cases until the pending motion before the MDL Panel

21   is resolved . . . .").  A stay is even more appropriate under the circumstances presented here, where

22   it is known that, if the *Buelow* Action is deemed appropriate for centralization with the other

23   securities actions, the court overseeing the action will be the Southern District of New York.

24

25

26   ─────────────────
     [4]    While this stay motion discusses a possible motion to remand, the stay sought here is not
27          limited to such a motion, but instead applies equally to all pretrial motions and proceedings,
            including the filing of responses to the complaint, case management conferences, and
28          discovery.

## II.     A Stay Of This Case Would Conserve Judicial Resources, Prevent Hardship To Defendants, And Present No Prejudice To Plaintiff

When deciding a motion to stay, courts typically consider three factors: "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated." *Hubuschman*, 2012 WL 3985509, at *1 (citation omitted) (granting stay pending JPML transfer).  The three factors weigh heavily in favor of staying proceedings here.

### A.     Plaintiff Will Not Be Prejudiced by a Brief Stay

Courts in this District repeatedly find that plaintiffs will not be prejudiced by a short stay pending a JPML determination on transfer.  *See, e.g.*, *Fuller*, 2009 WL 2390358, at *1 (noting lack of prejudice where "MDL Panel is expected to hear this matter within a few months"); *Freitas*, 2012 WL 161211, at *3 (finding no undue hardship and noting that claimed prejudice from "unnecessary transfer" is not the same as prejudice from stay); *see also Rivers*, 980 F. Supp. at 1362 n.5 (deciding that stay should be granted because considerations of judicial economy outweighed any potential prejudice).  The JPML will likely consider the transfer of this action approximately one month after this Court considers this stay motion.

Moreover, where an "action is still in its nascent stages of development," courts in this Circuit have found it "prudent to temporarily stay" proceedings pending a transfer decision by the JPML.  *McVicar v. Goodman Global Inc.*, No. SACV 13-1223-DOC, 2013 WL 6212149, at *2 (C.D. Cal. Nov. 25, 2013); *see also Franklin v. Prospect Mortg., LLC*, No. 2:13-cv-00790 JAM-AC, 2013 WL 6423389, at *2 (E.D. Cal. Dec. 9, 2013) (granting stay pending JPML decision and noting, *inter alia*, that plaintiffs took a month to serve defendant with complaint and "there has not been a significant amount of activity in this case").  The *Buelow* complaint was filed in state court only last month, and there has been virtually no activity since its filing other than Plaintiffs' stipulation to consolidation with two similar actions.  Indeed, Plaintiff has not served most of the corporate defendants and has not served any of the individual defendants.

**B.      Defendants May Suffer Harm Without a Short Stay**

Denying a brief stay would prejudice Defendants by exposing them to the risk that they

will have to litigate the same issues in multiple forums and thus expend their resources

unnecessarily.  Without a stay, Defendants may be required to move to dismiss, move to stay

discovery or oppose a motion to remand in this Court, all applying the law of this Circuit, only to

face the risk that they will have to re-brief the very same issues after the JPML decides to transfer

the case to the Alibaba Securities MDL.

Defendants also run the risk of being subjected to contradictory rulings if this case

proceeds without the benefit of the JPML's ruling.  For example, a decision by this Court granting

remand may be inconsistent with a decision denying remand in another class action asserting

Securities Act claims against Alibaba that may be filed in, and subsequently removed from,

another state court.  As another court in this District explained, defendants face a significant risk

of inconsistent outcomes in the absence of a stay under these circumstances:

> If this court denies plaintiffs' [remand] motion, and the case is later transferred,
> the MDL court could revisit the issue, thus forcing [defendant] to relitigate it.  If,
> on the other hand, this court grants the remand motion and the MDL later decides
> that removal in similar cases was proper, [defendant] would be prejudiced by
> having to litigate the case in state court instead of before the MDL.  Should this
> court deny the motion to stay, [defendant] would be left with two unfavorable
> alternatives that expose it to a significant risk of duplicative litigation and
> prejudice.

*Jones*, 2013 WL 3388659, at *3 (citation omitted).  This prejudice counsels heavily in favor of a

stay.

**C.      Granting a Short Stay Will Conserve Judicial Resources**

Perhaps most importantly, judicial resources will be conserved through a temporary stay.

As other courts in this District have explained, "[p]reservation of judicial resources is a primary

factor to consider in evaluating a motion to stay proceedings pending a transfer to an MDL court."

*Id.* at *2 (citing *Rivers*, 980 F. Supp. at 1360-61).  Granting a stay of proceedings is appropriate

when it would avoid unnecessary duplication of work and prevent inconsistent rulings.  Indeed,

the JPML has already concluded that centralization of seven securities class actions against

Alibaba challenging the same statements challenged in the *Buelow* Action would "eliminate

1    duplicative discovery; prevent inconsistent pretrial rulings, particularly with respect to class

2    certification; and conserve the resources of the parties, their counsel, and the judiciary."  Strauss

3    Decl. Ex. A at 1.  The *Buelow* Action is itself the result of a consolidation of similar actions

4    following Plaintiff's stipulation with other plaintiffs making similar allegations against Alibaba

5    and the other defendants.  As such, Plaintiff is well aware of the efficiencies served by

6    consolidation.

7           Defendants in the Alibaba Securities MDL have already moved to dismiss the consolidated

8    complaint, which motion requires Judge McMahon to consider whether the statements made in the

9    Registration Statement – the same statements challenged in this action – were materially false or

10   misleading.  Staying this proceeding pending a decision by the JPML would save this Court the

11   considerable time and resources necessary to become acquainted, unnecessarily, with a

12   complicated securities action.  *See Hubuschman*, 2012 WL 3985509, at *2 (staying securities

13   cases pending JPML decision where stay was "likely to conserve judicial resources").  Indeed, a

14   short stay of proceedings may be the last action taken by this Court with respect to this case, thus

15   clearly conserving judicial resources.  *See Pub. Emps. Ret. Sys. of Ohio v. Fastow, et al.*, No. C2-

16   02-965 (S.D. Ohio Oct. 22, 2002), at *6 (Strauss Decl. Ex. E) ("[T]he interests of judicial

17   economy and efficiency weigh in favor of granting a stay.  Naturally, if this Court grants a stay it

18   will save itself time and effort because it will no longer need to consider any motions in this case

19   unless the JPML chooses not to transfer this case to Texas.").   In short, because transfer of this

20   action to the Alibaba Securities MDL could dispose of the litigation in this Court forever, or at

21   least for the entirety of pretrial proceedings, a short stay now will conserve judicial resources

22   significantly.

23                                    **CONCLUSION**

24          Defendant Alibaba respectfully requests a brief stay of all proceedings in this action

25   pending resolution by the JPML of a transfer pursuant to 28 U.S.C. § 1407.

26

27

28

---

Dated: November 12, 2015

SIMPSON THACHER & BARTLETT LLP

By: _____ _/s/James G. Kreissman_____

JAMES G. KREISSMAN (SBN 206740)
jkreissman@stblaw.com
2475 Hanover Street
Palo Alto, California  94304
Telephone: (650) 251-5000
Facsimile: (650) 251-5002

*Attorneys for Defendant Alibaba Group Holding Limited*

**Appendix A:**

**Statements challenged as false and misleading in *Buelow* Complaint and in MDL Complaint**

| *Buelow* Complaint | MDL Complaint (Strauss Decl. Ex. B) |
|---|---|
| [T]he regulatory and legal system in China is complex and developing, and future regulations may impose additional requirements on our business. **(¶ 85)** | [T]he regulatory and legal system in China is complex and developing, and future regulations may impose additional requirements on our business. **(¶ 106)** |
| Maintaining the trusted status of our ecosystem is critical to our success, and any failure to do so could severely damage our reputation and brand, which would have a material adverse effect on our business, financial condition and results of operations. **(¶ 85)** | Maintaining the trusted status of our ecosystem is critical to our success, and any failure to do so could severely damage our reputation and brand, which would have a material adverse effect on our business, financial condition and results of operations. **(¶ 108)** |
| [A]bility to maintain our position as a trusted platform for online and mobile commerce is based in large part upon [. . .] the quality and breadth of products and services offered by sellers through our marketplaces, [and] the strength of our consumer protection measures. **(¶ 85)** | [A]bility to maintain our position as a trusted platform for online and mobile commerce is based in large part upon: . . . the quality and breadth of products and services offered by sellers through our marketplaces; [and] the strength of our consumer protection measures. **(¶ 110)** |
| We have received in the past, and we anticipate we will receive in the future, communications alleging that items offered or sold through our online marketplaces by third parties or that we make available through other services, such as our online music platform, infringe third-party copyrights, trademarks and patents or other intellectual property rights. Although we have adopted measures to verify the authenticity of products sold on our marketplaces and minimize potential infringement of third-party intellectual property rights through our intellectual property infringement complaint and take-down procedures, these measures may not always be successful. We have been and may continue to be subject to allegations of civil or criminal liability based on allegedly unlawful activities carried out by third parties through our online marketplaces. We also have been and may continue to be subject to allegations that we were participants in or facilitators of such allegedly unlawful activities. **(¶ 87)** | We have received in the past, and we anticipate we will receive in the future, communications alleging that items offered or sold through our online marketplaces by third parties or that we make available through other services, such as our online music platform, infringe third-party copyrights, trademarks and patents or other intellectual property rights. Although we have adopted measures to verify the authenticity of products sold on our marketplaces and minimizes potential infringement of third-party intellectual property rights through our intellectual property infringement complaint and take-down procedures, these measures may not always be successful. We have been and may continue to be subject to allegations of civil or criminal liability based on allegedly unlawful activities carried out by third parties through our online marketplaces. We also have been and may continue to be subject to allegations that we were participants in or facilitators of such allegedly unlawful activities. **(¶ 112)** |
| Moreover, illegal, fraudulent or collusive activities by our employees could also subject us to liability or negative publicity. For | Moreover, illegal, fraudulent or collusive activities by our employees could also subject us to liability or negative publicity. For |

| *Buelow* Complaint | MDL Complaint (Strauss Decl. Ex. B) |
|---|---|
| instance, we learned that in early 2011 and 2012 in two separate incidents, certain of our employees had accepted payments from sellers in order to receive preferential treatment on Alibaba.com and Juhuasuan[.] Although we dismissed the employees responsible for the incidents and have taken action to further strengthen our internal controls and policies with regard to the review and approval of seller accounts, sales activities and other relevant matters, we cannot assure you that such controls and policies will prevent fraud or illegal activity by our employees or that similar incidents will not occur in the future. Any such illegal, fraudulent or collusive activity could severely damage our brand and reputation as an operator of trusted marketplaces, which could drive users and buyers away from our marketplaces, and materially and adversely affect GMV transacted on our marketplaces, our revenues and our net income. (¶ 87) | instance, we learned that in early 2011 and 2012 in two separate incidents, certain of our employees had accepted payments from sellers in order to receive preferential treatment on Alibaba.com and Juhuasuan. Although we dismissed the employees responsible for the incidents and have taken action to further strengthen our internal controls and policies with regard to the review and approval of seller accounts, sales activities and other relevant matters, we cannot assure you that such controls and policies will prevent fraud or illegal activity by our employees or that similar incidents will not occur in the future. Any such illegal, fraudulent or collusive activity could severely damage our brand and reputation as an operator of trusted marketplaces, which could drive users and buyers away from our marketplaces, and materially and adversely affect GMV transacted on our marketplaces, our revenues and our net income. (¶ 118) |
| China has enacted laws and regulations governing Internet access and the distribution of products, services, news, information, audio-video programs and other content through the Internet. The PRC government has prohibited the distribution of information through the Internet that it deems to be in violation of PRC laws and regulations. If any of the information disseminated through our marketplaces and websites were deemed by the PRC government to violate any content restrictions, we would not be able to continue to display such content and could become subject to penalties, including confiscation of income, fines, suspension of business and revocation of required licenses, which could materially and adversely affect our business, financial condition and results of operations. (¶ 89) | China has enacted laws and regulations governing Internet access and the distribution of products, services, news, information, audio-video programs and other content through the Internet. The PRC government has prohibited the distribution of information through the Internet that it deems to be in violation of PRC laws and regulations. If any of the information disseminated through our marketplaces and websites were deemed by the PRC government to violate any content restrictions, we would not be able to continue to display such content and could become subject to penalties, including confiscation of income, fines, suspension of business and revocation of required licenses, which could materially and adversely affect our business, financial condition and results of operations. (¶ 125) |
| For example, under applicable consumer protection laws in China, e-commerce platform operators may be held liable for consumer claims relating to damage if they are unable to provide consumers with the true name, address and contact details of sellers or service providers. In addition, if we do not take | For example, under applicable consumer protection laws in China, e-commerce platform operators may be held liable for consumer claims relating to damage if they are unable to provide consumers with the true name, address and contact details of sellers or service providers. In addition, if we do not take |

| ***Buelow* Complaint** | **MDL Complaint (Strauss Decl. Ex. B)** |
|---|---|
| appropriate remedial action against sellers or service providers for actions they engage in that we know, or should have known, would infringe upon the rights and interests of consumers, we may be held jointly liable with the seller or service provider for such infringement. Moreover, applicable consumer protection laws in China hold that trading platforms will be held liable for failing to meet any undertakings such platforms make to consumers with regard to products listed on their websites[.] Furthermore, we are required to report to SAIC or its local branches any violation of applicable laws, regulations or SAIC rules by sellers or service providers, such as sales of goods without proper license or authorization, and to take appropriate remedial measures, including ceasing to provide services to such sellers or service providers[.] If claims are brought against us under any of these laws, we could be subject to damages and reputational damage as well as action by regulators, which could have a material adverse effect on our business, financial condition and results of operations. (¶ 89) | appropriate remedial action against sellers or service providers for actions they engage in that we know, or should have known, would infringe upon the rights and interests of consumers, we may be held jointly liable with the seller or service provider for such infringement. Moreover, applicable consumer protection laws in China hold that trading platforms will be held liable for failing to meet any undertakings such platforms make to consumers with regard to products listed on their websites. . . . Furthermore, we are required to report to SAIC or its local branches any violation of applicable laws, regulations or SAIC rules by sellers or service providers, such as sales of goods without proper license or authorization, and to take appropriate remedial measures, including ceasing to provide services to such sellers or service providers. If claims are brought against us under any of these laws, we could be subject to damages and reputational damage as well as action by regulators, which could have a material adverse effect on our business, financial condition and results of operations. (¶ 125) |
| ***Measures against counterfeit products.*** To protect consumers, brand owners and legitimate sellers and to maintain the integrity of our marketplaces, we have put in place a broad range of measures to prevent counterfeit and pirated goods from being offered and sold on our marketplaces[.] These measures include: <ul><li>identifying, issuing warnings and taking down counterfeit products from our marketplaces,</li><li>providing an online complaint platform for brand owners to report infringements,</li><li>conducting random checks by using third parties to purchase suspected counterfeit products; and</li><li>enhancing our communication with various relevant government authorities to eradicate sources of counterfeit</li></ul> | *Measures against counterfeit products.* To protect consumers, brand owners and legitimate sellers and to maintain the integrity of our marketplaces, we have put in place a broad range of measures to prevent counterfeit and pirated goods from being offered and sold on our marketplaces. These measures include: <ul><li>identifying, issuing warnings and taking down counterfeit products from our marketplaces;</li><li>providing an online complaint platform for brand owners to report infringements;</li><li>conducting random checks by using third parties to purchase suspected counterfeit products on our marketplaces; and</li><li>enhancing our communication with various relevant government authorities to eradicate sources of counterfeit</li></ul> |

| ***Buelow* Complaint** | **MDL Complaint (Strauss Decl. Ex. B)** |
|---|---|
| goods.<br>We have also established cooperative relationships with over 1,000 major brand owners and several industry associations in connection with intellectual property rights protection to enhance the effectiveness of our take-down procedures and other anti-counterfeiting measures. (¶ 91) | goods.<br>We have also established cooperative relationships with over 1,000 major brand owners and several industry associations in connection with intellectual property rights protection to enhance the effectiveness of our take-down procedures and other anti-counterfeiting measures. (¶ 127) |
| ***Measures against fictitious transactions*.** We have implemented measures to prevent, detect and reduce the occurrence of fictitious transactions on Taobao Marketplace and Tmall including:<br><br>• requiring the use of sellers' real identities to set up accounts with us,<br>• analyzing transaction patterns to identify anomalies;<br>• dynamic password protection and real-time monitoring of user login behavior, [and]<br>• maintaining a "blacklist" of sellers and buyers who have been involved in fictitious transactions in the past. (¶ 91) | ***Measures against fictitious transactions*.** We have implemented measures to prevent, detect and reduce the occurrence of fictitious transactions on Taobao Marketplace and Tmall including:<br><br>• requiring the use of sellers' real identities to set up accounts with us;<br>• analyzing transaction patterns to identify anomalies;<br>• dynamic password protection and real-time monitoring of user login behavior;<br>• enabling buyers and sellers to report suspicious transactions to us;<br>• maintaining a "blacklist" of sellers and buyers who have been involved in fictitious transactions in the past; and<br>• collaborating with industry partners and law enforcement authorities on Internet security. (¶ 129) |
| ***We maintain a "no tolerance" policy with regard to counterfeit and fictitious activities on our marketplaces.*** However, because many sellers doing business on our marketplaces depend on us for their livelihood, we have generally eschewed a "shoot-first, ask questions later" approach to handling complaints. When we receive complaints or allegations regarding infringement or counterfeit goods, we follow well-developed procedures to verify the nature of the complaint and the relevant facts before de-listing the items[.] Generally, we give sellers who have been accused of posting or selling counterfeit products up to three days to refute the allegations and provide evidence of the authenticity of the product. | **<u>We maintain a "no tolerance" policy with regard to counterfeit and fictitious activities on our marketplaces.</u>** However, because many sellers doing business on our marketplaces depend on us for their livelihood, we have generally eschewed a "shoot-first, ask questions later" approach to handling complaints. When we receive complaints or allegations regarding infringement or counterfeit goods, we follow well-developed procedures to verify the nature of the complaint and the relevant facts before de-listing the items. Generally, we give sellers who have been accused of posting or selling counterfeit products up to three days to refute the allegations and provide evidence of the authenticity of the product. |

| **_Buelow_ Complaint** | **MDL Complaint (Strauss Decl. Ex. B)** |
|---|---|
| If allegations of posting or selling counterfeit products have not been refuted or fictitious activities have been confirmed, we penalize the parties involved through a number of means including | If allegations of posting or selling counterfeit products have not been refuted or fictitious activities have been confirmed, we penalize the parties involved through a number of means including: |
| • immediately delisting the products;<br>• arranging for the seller to reimburse the buyer;<br>• assessing penalty points against the seller or limiting its ability to add listings for a certain period;<br>• adopting a "name and shame" policy;<br>• imposing restrictions from participation in promotional activities on our marketplaces; and<br>• closing down storefronts and, for Tmall sellers, confiscating the consumer protection security deposits paid[.] The seller is banned permanently from establishing another storefront on our marketplaces[.] | • immediately delisting the products;<br>• arranging for the seller to reimburse the buyer;<br>• assessing penalty points against the seller or limiting its ability to add listings for a certain period;<br>• adopting a "name and shame" policy;<br>• imposing restrictions from participation in promotional activities on our marketplaces; and<br>• closing down storefronts and, for Tmall sellers, confiscating the consumer protection security deposits paid. The seller is banned permanently from establishing another storefront on our marketplaces. |
| In appropriate circumstances we also notify the relevant law enforcement and other authorities to take legal action against the offending party, including in extreme cases criminal proceedings[.] **(¶ 93)** | In appropriate circumstances we also notify the relevant law enforcement and other authorities to take legal action against the offending party, including in extreme cases criminal proceedings. **(¶ 131)** |
| **Regulation of Advertising Services**<br>The principal regulations governing advertising businesses in China are:<br>• The Advertising Law of the PRC (1994);<br>• The Advertising Administrative Regulations (1987),<br>• The Implementing Rules for the Advertising Administrative Regulations (2004), and<br>• The Administration Rules of Foreign-invested Advertising Enterprises (2008). **(¶ 95)** | **Regulation of Advertising Services**<br>The principal regulations governing advertising businesses in China are:<br>• The Advertising Law of the PRC (1994);<br>• The Advertising Administrative Regulations (1987),<br>• The Implementing Rules for the Advertising Administrative Regulations (2004); and<br>• The Administration Rules of Foreign-invested Advertising Enterprises (2008). **(¶ 144)** |
| Applicable PRC advertising laws, rules and regulations contain certain prohibitions on the content of advertisements in China (including prohibitions on misleading content, superlative | Applicable PRC advertising laws, rules and regulations contain certain prohibitions on the content of advertisements in China (including prohibitions on misleading content, superlative |

| *Buelow* Complaint | MDL Complaint (Strauss Decl. Ex. B) |
|---|---|
| wording, socially destabilizing content or content involving obscenities, superstition, violence, discrimination or infringement of the public interest)[.] Advertisements for anesthetic, psychotropic, toxic or radioactive drugs are prohibited, and the dissemination of advertisements of certain other products, such as tobacco, patented products, pharmaceuticals, medical instruments, agrochemicals, foodstuff, alcohol and cosmetics, are also subject to specific restrictions and, requirements. . . Violation of these laws, rules and regulations may result in penalties, including fines, confiscation of advertising income, orders to cease dissemination of the advertisements and orders to publish an advertisement correcting the misleading information. (¶ 95) | wording, socially destabilizing content or content involving obscenities, superstition, violence, discrimination or infringement of the public interest). Advertisements for anesthetic, psychotropic, toxic or radioactive drugs are prohibited, and the dissemination of advertisements of certain other products, such as tobacco, patented products, pharmaceuticals, medical instruments, agrochemicals, foodstuff, alcohol and cosmetics, are also subject to specific restrictions and requirements. Advertisers, advertising operators and advertising distributors, including the businesses that certain of the variable interest entities operate, are required by applicable PRC advertising laws, rules and regulations to ensure that the content of the advertisements they prepare or distribute are true and in compliance with applicable laws, rules and regulations. Violation of these laws, rules and regulations may result in penalties, including fines, confiscation of advertising income, orders to cease dissemination of the advertisements and orders to publish an advertisement correcting the misleading information. In circumstances involving serious violations, the SAIC or its local branches may revoke the violator's license or permit for advertising business operations. In addition, advertisers, advertising operators or advertising distributors may be subject to civil liability if they infringe the legal rights and interests of third parties, such as infringement of intellectual proprietary rights, unauthorized use of a name or portrait and defamation. (¶ 144) |
| **Regulation of Online and Mobile Commerce** China's online and mobile commerce industry is at an early stage of development and there are few PRC laws, regulations or rules specifically regulating this industry[.] The SAIC adopted the Interim Measures for the Administration of Online Commodities Trading and Relevant Services on May 31, 2010 and replaced those measures with the | Regulation of Online and Mobile Commerce China's online and mobile commerce industry is at an early stage of development and there are few PRC laws, regulations or rules specifically regulating this industry. The SAIC adopted the Interim Measures for the Administration of Online Commodities Trading and Relevant Services on May 31, 2010 and replaced those measures with the |

| *Buelow* Complaint | MDL Complaint (Strauss Decl. Ex. B) |
|---|---|
| Administrative Measures for Online Trading on January 26, 2014, which became effective on March 15, 2014[.] The SAIC also issued the Opinions on Strengthening the Administration of Online Group Buying Operations on March 12, 2012 to subject group buying website operators to the foregoing measures, especially those relating to marketplace platform service providers[.] These newly issued measures impose more stringent requirements and obligations on the online trading or service operators as well as the marketplace platform providers[.] For example, the marketplace platform providers are obligated to examine the legal status of each third-party merchant selling products or services on the platform and display on a prominent location on the web page of such merchant the information stated in the merchant's business license or a link to such business license, and a group buying website operator must only allow a third-party merchant with a proper business license to sell products or services on its platform. Where the marketplace platform providers also act as online distributors, these marketplace platform providers must make a clear distinction between their online direct sales and sales of third-party merchant products on the marketplace platform[.] (**¶ 95**) | Administrative Measures for Online Trading on January 26, 2014, which became effective on March 15, 2014. The SAIC also issued the Opinions on Strengthening the Administration of Online Group Buying Operations on March 12, 2012 to subject group buying website operators to the foregoing measures, especially those relating to marketplace platform service providers. These newly issued measures impose  more stringent requirements and obligations on the online trading or service operators as well as the marketplace platform providers. For example, the marketplace platform providers are obligated to examine the legal status of each third-party merchant selling products or services on the platform and display on a prominent location on the web page of such merchant the information stated in the merchant's business license or a link to such business license, and a group buying website operator must only allow a third-party merchant with a proper business license to sell products or services on its platform. Where the marketplace platform providers also act as online distributors, these marketplace platform providers must make a clear distinction between their online direct sales and sales of third-party merchant products on the marketplace platform. (**¶ 147**). |